IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Jonathan A. Edwards, *a/k/a Jonathan Antonio Edwards,* </br></br>                    Plaintiff,</br></br>v.</br></br>Ms. Ogunsile; Mr. Medvar; Acc Warden Claytor; Acc Warden Flo Mauney; Ms. Cocciolone,</br></br>                    Defendants. | C/A No. 0:09-3319-TLW-PJG </br></br></br> **ORDER AND</br>REPORT AND RECOMMENDATION** |

The plaintiff, Jonathan A. Edwards ("Edwards"), a self-represented state prisoner, filed this civil rights action pursuant to 42 U.S.C. § 1983. This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) DSC for a Report and Recommendation on the defendants' motion for summary judgment (ECF No. 29.) Pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), Edwards was advised of the summary judgment and dismissal procedures and the possible consequences if he failed to respond adequately to the defendants' motion. (ECF No. 34.) Edwards filed a response in opposition, (ECF Nos. 40 & 47), the defendants filed a reply (ECF No. 48), and Edwards filed a sur-reply (ECF No. 49).[1] Having carefully considered the parties' submissions and the applicable law, the court finds that the defendants' motion should be granted.

---

[1] The Local Rules make no provision for sur-replies. Further, under Local Civil Rule 7.07 DSC, "[r]eplies to responses are discouraged." However, even considering Edward's sur-reply, it does not change the court's analysis of the legal issues and its recommendation to grant summary judgment. To the extent that Edwards attempts to raise in his sur-reply additional claims against the defendants that were not asserted in his Complaint, these claims are not properly before the court in this action. See Bridgeport Music, Inc. v. WM Music Corp., 508 F.3d 394, 400 (6th Cir. 2007) (holding that a party may not expand its claims to assert new theories in response to summary judgment); White v. Roche Biomedical Labs., Inc., 807 F. Supp. 1212, 1216 (D.S.C. 1992) (noting that "a party is generally not permitted to raise a new claim in response to a motion for summary judgment").

**BACKGROUND**

Edwards complains that he was kept in punitive segregation for a disciplinary conviction beyond the time prescribed. He also alleges that he was placed on security detention without a hearing. Finally, he states that he is not being provided a sufficient amount of food and that he is being assaulted and threatened.

**DISCUSSION**

**A.     Summary Judgment Standard**

Summary judgment is appropriate only if the moving party "shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party may support or refute that a material fact is not disputed by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Rule 56 mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.

The moving party has the burden of proving that summary judgment is appropriate. Once the moving party makes this showing, however, the opposing party may not rest upon mere

allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial. See Fed. R. Civ. P. 56(c), (e); Celotex Corp., 477 U.S. at 322. Further, while the federal court is charged with liberally construing a complaint filed by a *pro se* litigant to allow the development of a potentially meritorious case, see, e.g., Cruz v. Beto, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

**B.     Edwards's Claims**

    **1.     Official Capacity Claims**

The defendants correctly assert that to the extent they are sued in their official capacities, they are immune from suit. The Eleventh Amendment states that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. art. XI. Sovereign immunity protects both the State itself and its agencies, divisions, departments, officials, and other "arms of the State." See Will v. Michigan Dep't of State Police, 491 U.S. 58, 70 (1989); see also Regents of the Univ. of California v. Doe, 519 U.S. 425, 429 (1997) ("[I]t has long been settled that the reference [in the Eleventh Amendment] to actions 'against one of the United States' encompasses not only actions in which a State is actually named as the defendant, but also certain actions against state agents and state instrumentalities."). Although a State may waive sovereign immunity, Lapides v. Board of Regents, 535 U.S. 613 (2002), the State of South Carolina has specifically denied this waiver for suit in federal district court. See S.C. Code

Ann. § 15-78-20(e). As arms of the State, government employees acting in their official capacities are not "persons" for purposes of § 1983. <u>Will</u>, 491 U.S. at 70-71.

### 2. Personal Participation

Defendants Mauney, Claytor, and Ogunsile are entitled to judgment as a matter of law because Edwards raises no allegations that they personally participated in any way in the alleged violations of his constitutional rights. The doctrine of respondeat superior cannot support liability under § 1983. <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658, 691-94 (1978). The law is clear that personal participation of a defendant is a necessary element of a § 1983 claim against a government official in his individual capacity. <u>See</u> <u>Trulock v. Freeh</u>, 275 F.3d 391, 402 (4th Cir. 2001). "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1948 (2009). Mere knowledge is not sufficient to establish personal participation. <u>Id.</u> As the <u>Iqbal</u> Court observed, because masters do not answer for the torts of their servants in § 1983 cases, "the term 'supervisory liability' is a misnomer." <u>Id.</u> at 1949. Indeed, the dissent in <u>Iqbal</u> opined that "[l]est there be any mistake, in these words the majority is not narrowing the scope of supervisory liability; it is eliminating [] supervisory liability entirely." <u>Id.</u> at 1957 (Souter, J., dissenting). Moreover, even if the majority in <u>Iqbal</u> did not entirely dispense with the concept of liability of a supervisor in a § 1983 case, the instant Complaint fails entirely to plead facts sufficient to go forward on such a theory based on Fourth Circuit precedent. <u>See</u> <u>Carter v. Morris</u>, 164 F.3d 215, 221 (4th Cir. 1999); <u>Shaw v. Stroud</u>, 13 F.3d 791, 798 (4th Cir. 1994) (outlining the requirements to hold a supervisor liable for constitutional injuries inflicted by their subordinates). Edwards's claims regarding the denial of food and the alleged threats must

similarly fail against all of the defendants, as he has not alleged that any of the named defendants participated in those alleged actions.

### 3. Defendant Cocciolone

Edwards's claim against Defendant Cocciolone fails for the additional reason that he has failed to allege any facts about her that would give rise to a constitutional claim. Edwards's allegation with regard to Defendant Cocciolone—the Grievance Coordinator at his facility—is that she was unable to find the tape and documents related to Edwards's disciplinary hearing. (Compl., ECF No. 1 at 3.) This bare allegation, even accepted as true, fails to state a plausible claim for violation of any constitutional right. Iqbal, 129 S. Ct. at 1949. Moreover, even construed as a claim that Defendant Cocciolone mishandled his grievance in some manner, prisoners have no constitutional right to a grievance procedure. See Adams v. Rice, 40 F.3d 72 (4th Cir. 1994) (holding that inmates have no constitutional right to a grievance procedure); Shabazz v. Maynard, No. 0:02-1208-10BD, 2002 WL 32332072 (D.S.C. Nov. 25, 2002) (unpublished) (indicating that "a violation of the SCDC's grievance policy is not a violation of any federal right").

### 4. Disciplinary and Security Detention

Even if Edwards's claims did not fail for the reasons stated above, his claim that he was held in disciplinary detention must fail because he has not had his conviction overturned, and success on this claim would necessarily imply the invalidity of his disciplinary conviction. A plaintiff cannot recover damages on a § 1983 civil rights claim for an allegedly unconstitutional conviction without first having that conviction reversed, expunged, or called into question by a writ of habeas corpus. Heck v. Humphrey, 512 U.S. 477, 486-87 (1994). The rule in Heck applies to prison disciplinary convictions as well as criminal ones. Edwards v. Balisok, 520 U.S. 641 (1997). The Supreme Court has further observed that the holdings of Heck and Balisok, taken together,

indicate that a state prisoner's § 1983 action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)—if success in that action would necessarily demonstrate the invalidity of confinement or its duration.

Wilkinson v. Dotson, 544 U.S. 74, 81-82 (2005).[2]

Here, the defendants have presented unrefuted evidence that Edwards was sentenced to consecutive periods of disciplinary segregation for multiple disciplinary infractions. (See generally, Medvar Aff., ECF No. 29-3 at 3-7; Mauney Aff., ECF No. 29-3 at 8-12; Ogunsile Aff., ECF No. 29-4 at 10-15.) Edwards seeks in his Complaint compensation "for each day in which [the defendants] held [him] in punitive segregation," as well as restoration of his good time credits. (See Compl. ¶ V, ECF No. 1 at 5.) Because the relief sought by Edwards would necessarily imply the invalidity of those disciplinary convictions, his § 1983 claim is barred. (See id. ("I also want every charge that I was convicted of after 8-7-2008 squashed off my record . . . .")).

Moreover, to the extent Edwards seeks such relief in connection with the time he spent in security detention, which is a apparently a term of segregation used for inmates deemed to present a security threat to the prison, he has no interest protected by the Due Process Clause. See Sandin v. Connor, 515 U.S. 472, 485-86 (1995); see also Keeler v. Pea, 782 F. Supp. 42, 44 (D.S.C. 1992) ("An inmate has no liberty interest in remaining in the general prison population because administrative segregation is 'the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration.' ") (quoting Hewitt v. Helms, 459 U.S. 460 (1983));

---

[2] By contrast, the United States Supreme Court has recognized that a § 1983 suit may proceed where the prisoner did not seek expungement of the disciplinary conviction and the court found or assumed no good-time credits were eliminated by the challenged conviction. Muhammad v. Close, 540 U.S. 749, 754 (2004). There, the prisoner's challenge "could not [] be construed as seeking a judgment at odds with his conviction or with the State's calculation of time to be served in accordance with the underlying sentence." Id. at 754-55.

Backey v. S.C. Dep't of Corr., No. 94-7495, 1996 WL 1737, at *1 (4th Cir. Jan. 3, 1996) (Table) ("[Plaintiff's] allegations of wrongful placement in administrative segregation do not involve the kind of significant or atypical hardship necessary to invoke the due process rights he avers were violated in this case); Pelzer v. Ozmint, C/A No. 2:09-2274-MBS, 2010 WL 2010907 (May 19, 2010 D.S.C.) (holding that a plaintiff's due process rights were not violated when he was placed in security detention).

Although the parties appear to agree that *prison policy* affords inmates a hearing before their initial placement in security detention, they disagree as to whether that hearing occurred in this case. As an initial matter, the defendants have presented evidence that Edwards was given a hearing, and Edwards has not presented any evidence supporting his claim to the contrary. Moreover, even if Edwards could support his assertion that he was not provided a hearing, violations of prison policies alone do not rise to the level of a constitutional deprivation. See Riccio v. Cnty. of Fairfax, Virginia, 907 F.2d 1459, 1469 (4th Cir. 1990) (recognizing that if state law grants more procedural rights than the Constitution requires, a state's failure to abide by that law is not a federal due process issue); Keeler, 782 F. Supp. at 44 (D.S.C. 1992) (stating that violations of prison policies which fail to reach the level of a constitutional violation are not actionable under § 1983).

### 5.     Prison Litigation Reform Act

Finally, the defendants correctly point out that because Edwards has alleged no physical injury, his claims fail under 42 U.S.C. § 1997e(e) ("No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury.").

**RECOMMENDATION**

For all of the foregoing reasons, the court recommends that the defendants' motion for summary judgment (ECF No. 29) be granted.

**ORDER**

In light of the court's conclusion that Edwards's claims fail as a matter of law, the motion of inmate Julian E. Rochester to intervene in this action (ECF No. 54) is denied. Additionally, Edwards's motions for a discretionary appointment of counsel under 28 U.S.C. § 1915(e)(1) are denied. (ECF Nos. 55 & 57.)

**IT IS SO ORDERED.**

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

January 23, 2011
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).